**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **AXALTA COATING SYSTEMS, LLC** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 21-03800** |
| | : | |
| **SRS VENTURES, INC.** | : | |
| | : | |

---

**McHUGH, J.**                                                                 **March 24, 2022**

**MEMORANDUM**

Plaintiff, Axalta Coating Systems, LLC ("Axalta") brings this breach of contract action against Defendant, SRS Ventures Inc. ("SRS Ventures"). To date, SRS Ventures has failed to enter an appearance, answer, or otherwise defend this action. The Clerk of Court entered a default against the Defendant, and Plaintiff now seeks entry of a default judgment pursuant to Federal Rule of Civil Procedure 55(b) in favor of Plaintiff and against SRS Ventures for $105,625.00 in contractual damages, plus interest, as well as $22,937.50 in attorneys' fees and costs.

### I.     Factual and Procedural Background

Axalta is a company that manufactures and distributes automotive paint and related products to automotive repair and body shops. Compl. ¶ 2, ECF 1. SRS Ventures operated several automotive body shops and refinish businesses. *Id.* ¶ 3. On April 15, 2015, Axalta and SRS Ventures signed a Master Incentive Program Agreement ("Master Agreement") that provided for future incentive agreements and outlined basic terms governing their business relationship. *Id.* ¶ 4; Ex. 1, ECF 1-1. On or about May 29, 2018, Axalta entered into such an Incentive Agreement with Defendant SRS Ventures, pursuant to the Master Agreement. *Id.* ¶ 5; Ex. 2. Under the Incentive Agreement, Defendant agreed to purchase and use Axalta products for 100% of its requirements for automotive paint and related materials, until it had purchased $2,535,851.00 in

Products at the then-current Suggested Refinisher Price List (the "Purchase Commitment"). Compl. ¶¶ 19, 20; Ex. 2 ¶ 3.  In exchange, Axalta provided Defendant with an upfront investment in the amount of $105,625.00.  Compl. ¶¶ 7,19; Ex. 2 ¶ 2.

Axalta alleges that Axalta met its obligations under the Incentive Agreement, but that Defendant took Axalta's upfront investment money and proceeded to breach the Incentive Agreement within two years, "in or around November 2018," by ceasing to purchase Axalta products without having fulfilled the Purchase Commitment.  Compl. ¶¶ 8, 26.  Axalta provided written notice to SRS Ventures of its breach by letter dated January 13, 2021.  *Id.*  ¶ 27.  This breach triggered certain contractual obligations.   In relevant part, the Incentive Agreement provides that if the Agreement is breached within the first two years, SRS Ventures must repay Axalta its initial investment of $105,625.00.  *Id*. at ¶ 28; Ex. 2 ¶5.   Additionally, the Master Agreement and Incentive Agreement provide that Axalta is entitled to attorneys' fees, court costs, interest, and other costs reasonably related to a suit for breach of the agreement.  Compl. ¶ 24; Ex. 1 ¶ 13; Ex. 2 ¶ 5.

On August 25, 2021, Axalta filed its Complaint against Defendant.  ECF 1.  After multiple unsuccessful attempts to locate and serve SRS Ventures' registered agent for service and only corporate officer, Asam Reynoso, Axalta moved for an order allowing service on SRS Ventures to be substituted on the California Secretary of State pursuant to Cal. Corp. Code 1702(a).  ECF 3.  On November 30, 2021, the Court entered an order granting the motion for substituted service. ECF 4.  Service of the Summons and the Complaint was properly effectuated on Defendant on December 18, 2021, 10 days after Axalta completed delivery of process on the California Secretary of State.  *See* Affidavit of Service, ECF 6; Cal. Corp. Code § 1702(a) (service is deemed complete on the 10th day after delivery of process).  After Defendant failed to file an answer, motion, or

other responsive pleading within twenty-one days from the date of service, as required by Federal Rule of Civil Procedure 12(a), Axalta requested entry of default against Defendant.  ECF 7.  The Clerk of the Court entered default against Defendant on January 18, 2022.

Axalta now moves for entry of a default judgment pursuant to Federal Rule of Civil Procedure 55(b) in favor of Plaintiff and against SRS Ventures for $105,625.00 in contractual damages, plus interest, as well as $22,937.50 in attorneys' fees and costs.  Plaintiff has supplemented the record with a declaration that it has also mailed process to all of Defendant's known addresses in compliance with the Court's Order and Section 415.30(a) of the California Code of Civil Procedure.[1]  ECF 12.  One of the mailings was returned as undeliverable, while two of the mailings were delivered.  *Id.*  It has been over 30 days since process was mailed.  *Id.*  To date, Defendant has not appeared in this action or otherwise responded to Plaintiff's Complaint or Motion for Default Judgment, so Plaintiff's motion is ripe for consideration.[2]

---

[1] In response to Plaintiff's Motion for Default Judgment, the Court ordered Plaintiff to supplement the record certifying that copies of the complaint and summons had been mailed to the possible addresses for SRS Ventures and Mr. Reynoso.  ECF 9.  Plaintiff's counsel then filed a declaration that the initial mail service was not in full compliance with § 415.30(a).  The Court suspended ruling on the pending motion until the record was supplemented with additional evidence of attempted service.  ECF 11.  Plaintiff has now supplemented the record.  ECF 12.

[2] As a threshold matter, when a default judgment is requested, a court is required to ensure that there are no jurisdictional defects.  *See Bolden v. Se. Pennsylvania Transp. Auth.*, 953 F.2d 807, 812 (3d Cir. 1991).

Here, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.  The Court also has personal jurisdiction over SRS Ventures.  While it is a California corporation, SRS Ventures entered into a contract to buy products from Axalta, a corporation with its principal place of business in Pennsylvania, which contained a term that the contract was to be governed by and enforced according to the law of Pennsylvania. In addition, the contract specifies that, "[e]ach party consents and submits to the exclusive jurisdiction of, and service of process by, the United States District Court for the Eastern District of Pennsylvania and the state courts of Pennsylvania." Ex. 1 ¶ 14, ECF 1-1.  Accordingly, this Court has personal jurisdiction over SRS Ventures.  *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 n.14 (1985) (cleaned up) (noting that there are a "'variety of legal arrangements' by which a litigant may give 'express or implied consent to the personal jurisdiction of the court'" and "[w]here such forum-selection provisions have been obtained through 'freely negotiated' agreements and are not 'unreasonable and unjust,' their enforcement does not offend due process.").

## II.   **Default Judgment Standard:**

Rule 55(a) of the Federal Rules of Civil Procedure provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Following the entry of default, the clerk may enter a default judgment if the plaintiff's claim is for a sum certain, but otherwise the plaintiff must apply to the court for judgment. Fed. R. Civ. P. 55(b).

Following the prerequisite entry of default, the decision to enter a default judgment is left to the court's discretion.  *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984).  In exercising its discretion, "[t]hree factors control whether a default judgment should be granted: (1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct."  *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000).

Here, consideration of these factors ultimately weighs in favor of granting a default judgment.  First, there is a risk of prejudice to Plaintiff if default is denied, as Plaintiff is owed over $100,000 under the terms of the contract.  Second, it is unknown if the Defendant has any litigable defenses because the Defendant has not asserted any defense, either by answering the allegations of the complaint or by opposing the present motion for default judgment.  For the third factor, Defendant has neither engaged in this litigation process nor offered any reason for his failure to appear.  Weighing against entry of a default judgment is the fact that it is not apparent that the Defendant has actual notice of the suit against it, which would explain its failure to appear or respond.  Plaintiff has, however, attempted to effect service on Defendant both personally and by mail at its registered corporate address, as well as two additional addresses.  Given Plaintiff's

thorough and good faith attempts to serve Defendant, as well as the prejudice to Plaintiff that would arise from further delay, I conclude that entry of a default judgment is warranted.

## III.    Assessing Liability and Damages:

The court should accept as true any factual allegations of the Complaint, except those related to the amount of damages. *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990) (citing 10 C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure, § 2688 at 444 (2d ed.)).  In addition, "it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." 10 A. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2688.1 (4th ed.).

   a.   Request for Contractual Damages:

The allegations in the complaint, taken as true, are sufficient to show that Plaintiff is entitled to damages for its breach of contract claim.  Under Pennsylvania law, "[i]t is well-established that three elements are necessary to plead a cause of action for breach of contract: (1) the existence of a contract, including its essential terms, (2) a breach of the contract; and, (3) resultant damages." *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. L. Firm of Malone Middleman, P.C.*, 137 A.3d 1247, 1258 (Pa. 2016).

Here, Axalta attached both the 2015 Master Agreement (Exhibit 1), as well as the 2018 Incentive Agreement to its Complaint (Exhibit 2).  The contracts contain the essential terms and are signed by both parties.  As to breach, Plaintiff alleges that, "SRS Ventures took the Incentive Payment, but in or around November 2018 breached the Agreement by ceasing to purchase Axalta products without having fulfilled the Purchase Commitment and less than two years after the Effective Date."   Compl. ¶ 26.  The allegations in the complaint must be taken as true, so the

Court assumes that SRS Ventures did indeed breach the contract by ceasing to purchase Axalta products within the first two years.  Axalta provided written notice to SRS of its breach by a letter dated January 13, 2021, but to date, SRS Ventures has not cured the breach.  The complaint alleges that the breach occurred in November 2018 and the complaint here was filed in August 2021, so the action is within the four-year statue of limitations governing breach of contract actions under Pennsylvania law.  13 Pa. Cons. Stat. § 2725.

> Axalta's damages are governed by a provision in the agreement, which provides that:

> Should Axalta terminate this Incentive Agreement pursuant to Section 5(a) of the Master Agreement or Customer fails to satisfy the Purchase Commitment upon the expiration of the Term [of 84 months], Customer shall immediately pay Axalta to partially compensate Axalta for its loses, the following early termination charges ("Termination Charges"): During the first two (2) years after the Effective Date of this Incentive Agreement, Customer shall pay Axalta $105,625.00. . . These Termination Charges are in addition to attorney's fees, court costs, interest and other costs reasonably incurred by Axalta in any dispute, controversy or claim arising out of or relating to the Incentive Agreement or litigation or other action to enforce the Incentive Agreement.

Ex. 2 ¶ 5.  The 84-month term has not yet expired, so Axalta seeks Early Termination charges on the basis of Section 5(A) of the Master Agreement, which provides if a breach is not remedied within 30 days of written notice of the breach, Axalta may terminate the Master Agreement or any Incentive Agreement, in whole or in part.  Exhibit 1 ¶ 5.  Here, Axalta provided written notice of the breach, but it has not been cured.  Axalta, therefore, may terminate the Incentive Agreement and seek damages.

Pursuant to the terms of the Incentive Agreement, Axalta is owed $105,625.00, as well as interest.  Under Pennsylvania law, prejudgment interest for breach of contract actions is a legal right.  *See Verner v. Shaffer*, 500 A.2d 479 (Pa. Super. Ct. 1985).  In determining a party's right to prejudgment interest, Pennsylvania courts have adopted the Restatement Second, Contracts § 354,

which provides in part "[i]f the breach consists of a failure to pay a definite sum in money or to render a performance with fixed or ascertainable monetary value, interest in recoverable from the time for performance on the amount due less deductions to which the party in breach is entitled." *See id.* at 481.  Here, in the event of breach, the contract specifies that SRS shall pay Axalta a certain sum: $105,625.00.

As Axalta is entitled to prejudgment interest, the Court must determine the operative start date for interest.  "In claims that arise out of a contractual right, interest has been allowed at the legal rate from the date that payment was wrongfully withheld, where the damages are liquidated and certain, and the interest is readily ascertainable through computation." *Daset Min. Corp. v. Industrial Fuels Corp.,* 473 A.2d 584, 597 (Pa. Super. Ct. 1984).  Comment b to the Restatement Second, Contracts § 354 states that, "[i]nterest is not payable as damages for non-performance until performance is due."  Here, while the Complaint alleges that SRS stopped purchasing Axalta products in November 2021, SRS does not owe Axalta Early Termination Charges until Axalta terminates the Agreement pursuant to Section 5(a) of the Master Agreement.  Ex. 2 ¶ 5.  Section 5(a) provides that if, as here, SRS ceases to use the products during the term, and such breach is not remedied within thirty days after written notice is received by Customer, then Axalta may terminate the Agreement, at which point SRS must immediately pay Axalta the Early Termination Charges.  Exhibit 1.  Therefore, SRS's $105,625.00 obligation to Axalta began thirty days after Axalta issued notice of breach to SRS: February 12, 2021.

Finally, as the contract refers to an obligation to pay "with interest," the applicable rate shall be construed to refer to the rate of interest of six per cent per annum pursuant to 41 Pa. Stat. Ann. § 202 (West).  Therefore, Axalta is entitled to default judgment in the amount of $105,625.00 plus interest at a rate of six percent from February 12, 2021 to March 24, 2022.

b.  <u>Request for Attorneys' Fees</u>:

In assessing a request for attorney's fees, "the most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Performing this calculation will provide the "lodestar" figure, which is presumed to be the reasonable fees for the matter. *Rode v. Dellaciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990). The party seeking the attorney's fees has the burden to prove that the requested attorney's fees are reasonable, which initially requires the fee petitioner to "submit evidence supporting the hours worked and the rates claimed." *Id*. at 1183 (quoting *Hensley*, 461 U.S. at 433). An hourly rate is reasonable if the fee applicant demonstrates by evidence, in addition to the fee applicant's own affidavit, that the suggested rate is comparable to the current "rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001) (cleaned up) .

Plaintiff has failed to provide sufficient evidence demonstrating that the requested amount of attorneys' fees is reasonable. In support of its request for attorneys' fees in the amount of $22,937.50, Plaintiff attaches an affidavit from Plaintiff's counsel stating that the attorneys' fees "include significant time investments in locating alternative methods and addresses to complete service on Defendant, and then substituting service on the California Secretary of State." ECF 8-1, ¶ 9(c). The affidavit also states that "based on this information and my familiarity of billing arrangements for similar actions, I conclude that this firm's rates are reasonable, as determined by the relevant marketplace for legal services and in light of the experience and skills of the undersigned and the other personnel of my firm." *Id*. ¶ 9(d). Plaintiff does not provide an itemized list of the hours worked or the rates claimed. Because Plaintiff has not submitted evidence

demonstrating that its request amount of attorney's fees is reasonable, the Court will require Plaintiff to submit further evidence to support the request.

While Plaintiff has not adequately supported its claim for the requested amount of attorney's fees, the Court does not find that a hearing is necessary under Rule 55(b)(2)(B) to determine the amount of damages due, as the requested amount will likely be computable from proper documentary evidence. *See* 10 Moore's Federal Practice-Civil § 55.32 (2021) ("[T]he 'hearing' may be one in which the court asks the parties to submit affidavits and other materials from which the court can decide the issue"). As such, Plaintiff will be required to submit further evidence in support of its claimed attorney's fees.

## IV.    Conclusion

Plaintiff's request for default judgment is granted in part and denied in part. Default judgment is entered against SRS in the amount of $105,625.00 plus interest at a rate of six percent from February 12, 2021 to March 24, 2022. An appropriate order follows.

      /s/ Gerald Austin McHugh
United States District Judge